IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

OTIS RAY REHM, JR.,                   )
           Plaintiff,              )
                                   )
v.                                    )          CIVIL ACTION NO. 1:12-07502
                                   )
CAROLYN. W. COLVIN,                   )
Acting Commissioner of Social Security, )
           Defendant.              )

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered November 8, 2012 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Otis Ray Rehm, Jr. (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on October 27, 2008 (protective filing date), alleging disability as of September 12, 2008, due to "herniated disk at L-4 due to a back injury and bulged disk at L-5 due to a back injury."[1] (Tr. at

---

[1] Claimant asserted that his impairments limited his ability to work as follows:

I have two disks damaged. One disk also is pushing on the nerve through my right leg causing pain, numbness, and muscle usage. Herniated disk bulged disk in L4-L5. I can't dress my lower body by myself. I can't bend or twist. I can't sit for more than 30 minutes. I can't lift any weight. [I] have trouble climbing stairs. I have to get my wife to help me clean myself after using the restroom. I have limited use of my right leg. I have moderate to severe pain 24 hours a day in my lower back and in my right hip and leg.

(Tr. at 217.)

10, 188-89, 190-91, 213, 217.) The claims were denied initially and upon reconsideration. (Tr. at 60-63, 64-66, 73-75, 76-78.) On May 1, 2009, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 79-80.) A hearing was held on July 21, 2010, before the Honorable Steven A. DeMonbreum. (Tr. at 27-33.) A supplemental hearing was held on February 2, 2011. (Tr. at 34-59.) By decision dated March 25, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-22.) The ALJ's decision became the final decision of the Commissioner on September 10, 2012, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) Claimant filed the present action seeking judicial review of the administrative decision on November 8, 2012, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying

2

inquiry four, the claimant establishes a <u>prima</u> <u>facie</u> case of disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2011). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the

degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

4

neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph © of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since September 12, 2008, the alleged onset date. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease, status post surgery; diabetes mellitus; hypertension; obesity; and depression," which were severe impairments. (Tr. at 12, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform sedentary work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the [C]laimant has the following work place limitations: lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk for 4 hours total in an 8-hour workday; sit for 6 or more hours total in an 8-hour workday with periodically alternating sitting and standing to relieve pain or discomfort every thirty minutes; occasional operation of foot controls with the bilateral lower extremities; frequent balancing; occasional climbing of ramps and stairs, kneeling, and stooping/bending; never climbing of ladders/ropes/scaffolds, crouching, and crawling; work that involves no exposure whatsoever to temperature extremes, vibrations, and workplace hazards such as dangerous machinery or unprotected heights. The [C]laimant is further limited to simple, unskilled work due to his depression.

5

(Tr. at 15, Finding No. 5.) At step four, the ALJ found that Claimant was unable to return to his past relevant work. (Tr. at 21, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an assembler, a packer, and an inspector, all sedentary, unskilled jobs. (Tr. at 21-22, Finding No. 10.) On this basis, benefits were denied. (Tr. at 22, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 15, 1973, and was 37 years old at the time of the supplemental administrative hearing on February 2, 2011. (Tr. at 21, 41, 188.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 21, 41, 216, 224.) In the past, he worked as an auto mechanic. (Tr. at 21, 41-42, 55, 217-19, 226-36.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below in relation to Claimant's arguments.

*Princeton Community Hospital*:

On September 12, 2008, Claimant presented to the emergency room with complaints of acute low back pain, right hip pain, and pelvic pain. (Tr. at 287-92.) Physical exam revealed full motor strength, normal sensation, negative straight leg-raising testing, and a normal gait. (Tr. at 287.) An x-ray of his right hip and pelvis was negative. (Tr. at 291.) The MRI of his lumbosacral spine, dated September 12, 2008, showed minimal disc space narrowing at L5-S1 and minimal anterior wedging of vertebral body L1. (Tr. at 292.) The MRI of Claimant's lumbar spine, dated September 25, 2008, revealed right L4-L5 disc herniation compressing on the thecal sac, a bulging disc and degenerative changes at L5-S1, and degenerative changes from L2-L4. (Tr. at 293.)

*Dr. Trevar O. Chapman, M.D. - Carilion Clinic*:

Claimant sought treatment from Dr. Chapman on October 23, 2008, for back pain. (Tr. at 350-53.) He reported that he had on and off back pain, with the most acute pain having been in the right hip in September, and then the back pain worsened. (Tr. at 350.) He had not been able to work since September 11, 2008, and indicated that he had trouble putting on his shoes and socks. (Id.) On exam, he had back pain that radiated into the right hip to the calf with numbness in the toes. (Id.) Dr. Chapman noted that he had very limited range of back motion with flexion and extension, decreased sensation, four out of five motor function on the right lower extremity, and symmetrical reflexes. (Tr. at 350-51.) He concluded that Claimant's MRI and physical findings were consistent with nerve root impingement that appeared to be resolving. (Tr. at 352.) He opined that his inability to work would be in the short term. (Id.)

Dr. Chapman administered lumbar epidural injections at L4-L5 on November 17, 2008, December 8, 2008, and February 9, 2009. (Tr. at 347-49.) On March 10, 2009, Dr. Chapman noted

Claimant's reports that the third epidural injection did not really help, though he indicated that his pain was better than on the initial visit. (Tr. at 343.) He continued to have difficulty dressing himself and sleeping due to pain, though the numbness in his toes was better. (<u>Id.</u>) Dr. Chapman noted that overall, Claimant was doing a little better. (<u>Id.</u>) Claimant took mainly Lortab at night for pain. (<u>Id.</u>) On exam, he was slow with movements and had moderately limited range of motion. (<u>Id.</u>) Dr. Chapman continued his diagnosis and recommended that Claimant continue the Lortab. (Tr. at 344.) He also discussed with Claimant the "need to look for employment that is not so physically demanding as the job he had." (<u>Id.</u>)

<u>*Gary Craft, M.D. - Consultative Examination*</u>:

On January 7, 2009, Dr. Craft conducted an examination at the request of the state agency. (Tr. at 305-310.) Claimant reported a four to five year history of dull, constant, low back pain that radiated down the right leg and was associated with numbness of the right leg. (Tr. at 305.) On physical exam, Dr. Craft noted that Claimant was alert and cooperative and was fully ambulatory and did not use any assistive devices. (Tr. at 306.) He had full range of motion of all extremities, had no muscle spasms of the back, forward bending of the back was 45 degrees, squatting was fair, station was normal, a minimal limp was present on the right, and toe and heel walking were normal. (Tr. at 306-07.) Straight leg raising testing hurt at 70 degrees on the right and was negative on the left. (Tr. at 307.) Motor strength of the lower extremities was four out of five on the right leg and five out of five on the left. (<u>Id.</u>)

In summary, Dr. Craft noted that Claimant had a moderate loss of forward bending with a minimal limp involving the right leg. (Tr. at 307.) He was free of any muscle wasting and did not require an assistive device. (<u>Id.</u>) Dr. Craft did not detect any joint abnormalities and noted that his fine and gross manipulation were intact. (<u>Id.</u>) He further noted that he did not detect any end organ damage resulting from his hypertension. (<u>Id.</u>) Dr. Craft opined that Claimant's prognosis of the musculoskeletal system, hypertension, and obesity was fair. (Tr. at 307-08.)

<u>*Dr. Marchel Lambrechts, M.D. - Physical RFC Assessment*</u>:

On January 24, 2009, Dr. Lambrechts completed a form RFC Assessment on which he opined

8

that Claimant was capable of performing light exertional level work with occasional climbing, stooping, and kneeling limitations; frequent balancing; and never crouching or crawling. (Tr. at 312-18.) He further opined that Claimant should avoid concentrated exposure to extreme cold and even moderate exposure to extreme heat, vibration, and hazards, such as machinery and heights. (Tr. at 315.) Dr. Rabah Boukhemis, M.D., affirmed Dr. Lambrechts' opinion as written on April 6, 2009. (Tr. at 319.)

_Raymond V. Harron, D.O. - The Neurological Center of Southwest Virginia_:

Claimant treated with Dr. Harron in July and August 2009, for evaluation of back pain and right lower extremity pain. (Tr. at 324-29.) On July 20, 2009, Dr. Harron noted on examination that Claimant had moderate muscle spasm, positive straight leg raising testing on the right, and decreased sensation. (Tr. at 324.) Dr. Harron recommended a right L4-5 lumbar discectomy. (Id.)

On August 17, 2009, Claimant underwent a pre-operative assessment and cardiac catheterization by Dr. Alan E. McLuckie, M.D. (Tr. at 360-66.) Dr. McLuckie observed that Claimant had normal range of back motion and no tenderness. (Tr. at 363.) Dr. Harron performed the right L4-5 lumbar laminectomy on August 27, 2009. (Tr. a 331-32, 383-84.)

Claimant returned to Dr. Harron on October 7, 2009, for a post-surgical evaluation. (Tr. at 337.) Claimant reported a thirty-five to forty-five percent improvement in his pre-operative right leg and back pain since surgery. (Id.) He indicated that he had continued discomfort down his right leg with certain positions. (Id.) Dr. Harron recommended physical therapy and Claimant declined and stated that he wanted to wait another six weeks to see how he progressed. (Id.) Dr. Harron scheduled a six-week follow-up, but the record indicates that this was the last time that he treated Claimant. (Tr. at 493.)

_Parkview Physical Therapy_:

Claimant presented for his initial therapy assessment on November 23, 2009. (Tr. at 340-41.) It was recommended that Claimant attend therapy three times a week for a period of six weeks. (Tr. at 341.) The record however, indicates that Claimant failed to return for physical therapy services after his initial

assessment.[3] On this same date, Claimant reported to Dr. Riaz U. Riaz, M.D., that he no longer needed to take Morphine or Lortab for his pain, and took only Tylenol. (Tr. at 462.)

*Dr. Donet Glasscock, D.O. - Princeton Family Healthcare*:

Treatment notes on October 16, 2009, reflect a diagnosis of chronic back pain, but no specific complaints from Claimant. (Tr. at 430, 436.) On March 1, 2010, Claimant reported that he had started experiencing left leg pain since surgery and had continued right leg pain and numbness. (Tr. at 444-45.) He was told by his neurosurgeon to have an MRI. (Tr. at 444.)

*Lumbar Spine MRI*:

On March 7, 2010, an MRI of Claimant's lumbar spine revealed no new disc herniations or new areas of spinal stenosis. (Tr. at 321.) He had a small right disc protrusion at L3-4 and prominent degenerative bulges at L2-3 and L5-S1, all unchanged. (Id.) It also was noted that he had an interval resection of the right posterolateral disc herniation at L4-L5 with residual enhancing scar, the location of Claimant's surgery. (Id.)

*Dr. Robert P. Kropac, M.D. - Orthopaedic Center of the Virginias*:

Claimant sought treatment from Dr. Kropac on October 29, 2010, for complaints of lower back pain. (Tr. at 493-96.) Claimant reported a fifteen year history of lower back pain, with no specific injury. (Tr. at 493.) He indicated that he took only over-the-counter medications for pain, primarily Motrin. (Id.) Claimant reported that the pain was constant and increased with bending, stooping, and prolonged sitting and standing. (Tr. at 494.) He reported radiation of pain to the right leg with occasional numbness with prolonged standing and sitting. (Id.)

On exam, Dr. Kropac noted tenderness to palpation of the lumbosacral spine, significantly limited

---

[3] A progress note from Dr. Donet Glasscock, D.O., dated January 18, 2010, indicated that Claimant completed rehab for his back at the beginning of the month with mild improvement. (Tr. at 439.) Dr. Glasscock noted that Claimant continued to be followed by Dr. Chapman for his back condition. (Id.)

range of lumbosacral spine motion, positive straight leg raising testing on the right and negative on the left, symmetrical reflexes, grossly intact sensation, full range of lower extremity motion, normal strength, an ability to heel and toe walk without weakness, and a non-antalgic gait. (Tr. at 495.) He diagnosed lumbar disc herniation, status-post laminectomy/discectomy. (Tr. at 496.) He opined that Claimant required permanent restrictions in activities to avoid exacerbating his back condition, such as heavy lifting, pushing, pulling, bending, stooping, and prolonged sitting or standing. (Id.) He further recommended that he use anti-inflammatory medication to control pain. (Id.)

On November 10, 2010, Dr. Kropac completed a form Physical RFC Assessment on which he opined that Claimant could lift and carry ten pounds occasionally and less than ten pounds frequently, could stand and walk less than two hours in an eight-hour day, and could sit less than six hours in an eight-hour day. (Tr. at 484-90.) He further opined that Claimant could never climb, but could occasionally balance, stoop, kneel, crouch, or crawl. (Tr. at 486.) Dr. Kropac failed to provide any medical evidence to support his conclusions as directed on the form. (Tr. at 484-90.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to include all of Claimant's impairments in the hypothetical question posed to the vocational expert ("VE"). (Document No. 11 at 2-3.) Claimant asserts that contrary to the ALJ's decision that Claimant could climb ramps and stairs only occasionally, he posed a hypothetical question to the VE that assumed an individual who could "easily climb ramps, stairs, and scaffolds. (Id. at 2.) Consequently, the ALJ failed to pose a hypothetical question that contained a climbing limitation on an occasional basis. (Id.) Claimant contends that remand therefore, is required. (Id. at 2-3.)

In response, the Commissioner asserts that essentially any error that the ALJ may have committed by omitting the occasional limitations is harmless. (Document No. 12 at 8-10.) The Commissioner asserts that Claimant fails to demonstrate any harm from the alleged error that would

have changed the ALJ's decision. (Id. at 9.) The Commissioner admits that "the ALJ's misstatement in his hypothetical question was entirely harmless and had no effect on his decision because the jobs that the VE provided that [Claimant] could perform involved no more than occasional climbing stairs and ramps." (Id.) The Commissioner contends therefore, that remand is inappropriate. (Id.)

Claimant next alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider the side effects of Claimant's medications when assessing Claimant's pain and credibility. (Document No. 11 at 3.) Claimant asserts that he repeatedly noted that his pain medications caused him to be very drowsy and slowed his reflexes and motor skills. (Id.) The ALJ, however, failed to address these side effects in his decision. (Id.)

In response, the Commissioner asserts in a footnote that Claimant overlooked the section of the ALJ's decision in which he considered Claimant's allegation that his narcotic pain medication caused fatigue. (Document No. 12 at 12, n.3.) The Commissioner asserts that Claimant indicated that he no longer took the narcotic pain medications. (Id.) Claimant therefore, had no limitations resulting from such medication side effects for which the ALJ needed to account in his RFC assessment. (Id.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to assess properly Claimant's pain and credibility and Dr. Kropac's opinion regarding Claimant's impairments and related limitations. (Document No. 11 at 3-10.) Claimant asserts that the ALJ improperly used Dr. Craft's single exam as a basis to discount Claimant's complaints of pain. (Id. at 4.) He notes that the ALJ improperly refers to Dr. Craft's benign exam results to imply that Claimant's laminectomy was not warranted. (Id.) Claimant further asserts that the ALJ failed to note Dr. Harron's treatment notes. (Id. at 5.) Rather, Claimant contends that the ALJ seemed to conclude that there was little or very little wrong with Claimant, despite his MRI report. (Id.) Claimant asserts that the ALJ improperly noted, without reference to the record, that the surgery was successful, and failed to note any findings thereafter that indicated Claimant's increase in pain. (Id. at

12

6.) He asserts that Dr. Glasscock noted on March 1, 2010, that he had ongoing pain in the right leg and had new findings of numbness in the left leg. (Id.) Claimant asserts that rather than focusing on his complaints, the ALJ improperly focused on the fact that he stopped taking narcotic pain medication as an indication that he was not in pain. (Id. at 7.) Furthermore, Claimant asserts that the ALJ improperly considered the March 2010, MRI results as benign when no medical evidence indicated the same. (Id. at 8.) Claimant further asserts that the ALJ erred in assessing Dr. Kropac's RFC assessment. (Id. at 9-10.)

In response, the Commissioner asserts that the ALJ properly assessed Claimant's pain and credibility. (Document No. 12 at 10-13.) The Commissioner asserts that following Claimant's surgery, Claimant reported improvement in that he did not need pain medications, his post-surgical MRI showed only degenerative changes, his physical examination findings essentially were normal, he required only minimal treatment, and he failed to follow through with physical therapy. (Id. at 12-13.) Furthermore, the Commissioner asserts that Claimant's reported activities of daily living were inconsistent with his subjective complaints. (Id. at 13.) Finally, the Commissioner asserts that the ALJ thoroughly analyzed Dr. Kropac's opinion in accordance with the Regulations and his decision is supported by the substantial evidence of record. (Id.) The Commissioner asserts that Dr. Kropac's opinion was not well-supported and inconsistent with the evidence of record. (Id. at 14.) Dr. Kropac examined Claimant on one occasion and his opinion is inconsistent with Claimant's limited treatment following his surgery. (Id.) Furthermore, Dr. Kropac failed to substantiate his opinion with any evidence. (Id.) Finally, Dr. Kropac's opinion is inconsistent with Claimant's reported activities. (Id.) The Commissioner therefore asserts, that the ALJ's decision to afford Dr. Kropac's opinion little weight is supported by the substantial evidence of record. (Id. at 14-15.)

<u>Analysis</u>.

1. <u>Hypothetical Question</u>.

Claimant alleges that the ALJ failed to include all of his impairments in the hypothetical question posed to the VE. (Document No. 11 at 2-3.) To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. <u>Walker v. Bowen</u>, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." <u>Id.</u> at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. <u>See</u> <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. <u>See</u> <u>Benenate v. Schweiker</u>, 719 F.2d 291, 292 (8th Cir. 1983).

The ALJ posed three hypothetical questions to the VE. (Tr. at 55-58.) The second hypothetical question, and the one at issue, encompassed limitations focusing on sedentary exertional level work. Among the postural limitations, the ALJ asked the VE to consider an individual who could "easily climb ramps, stairs, should never climb ladders, ropes or scaffolds, can frequently balance, occasionally kneel, should never crouch, should never crawl, [and] can occasionally stoop or bend." (Tr. at 57.) In his decision however, the ALJ found that Claimant could occasionally climb ramps and stairs. (Tr. at 15, Finding No. 5.) Claimant contends that the ALJ's finding contradicts the VE's testimony because the VE never was presented with a hypothetical question regarding sedentary work containing an occasional limitation for climbing ramps or stairs.

The undersigned finds that the ALJ's misstatements constitute error. However, the undersigned

14

further finds that such misstatement is harmless error. As the Commissioner notes, the ALJ found that Claimant was capable of performing the job of an assembler. This sedentary occupation does not require climbing. See e.g., Dictionary of Occupational Titles ("DOT") 734.687-018, 1991 WL 679950. The same is true for a precision inspector, for example. See e.g., DOT 716.381-010, 1991 WL 679442. Thus, even though the ALJ may have misstated the limitations in his hypothetical to the VE, the jobs identified by the VE do not require more than occasional climbing, as assessed by the ALJ in his RFC. Accordingly, the undersigned finds that any error that the ALJ may have committed is harmless and that Claimant's argument is without merit.

2. Medication Side Effects.

Claimant also alleges that the ALJ erred in failing to consider the side effects of his medications, particularly the drowsiness and slowed motor reflexes from his pain medications. (Document No. 11 at 3.) Pursuant to 20 C.F.R. §§ 404.1529(c)(3)(iv) and 416.929(c)(3)(iv), the type, dosage, effectiveness, and side effects of any medication a claimant takes to alleviate pain or other symptoms is but one factor the ALJ considers in evaluating the severity and intensity of Claimant's pain and credibility. 20 C.F.R. §§ 404.1529(c)(3)(iv) and 416.929(c)(3)(iv) (2011). Claimant testified at the supplemental administrative hearing that he had weaned himself off the oxycodone and morphine because he was the sole driver in his family and could not take such medications and drive. (Tr. at 45.) Additionally, the medical record indicates that he no longer took narcotic pain medications. (Tr. at 17, 462, 493.) Accordingly, the undersigned finds that Claimant did not have any medication side effects that the ALJ could have considered, and that Claimant's argument is without merit.

3. Pain and Credibility.

Finally, Claimant alleges that the ALJ erred in assessing his pain and credibility. (Document No. 11 at 3-11.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that

reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2011); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2011).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms

16

(e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2011).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities.

17

20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In view of error it found in the ALJ's pain analysis, the Craig Court remanded, stating its reasoning as follows:

> [T]he ALJ did not expressly consider the threshold question of whether Craig had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain. . . . Accordingly, we remand to the ALJ to determine whether Craig has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains. If the ALJ concludes that she does, then, and only, then, should it undertake an assessment into the credibility of Craig's subjective claims of pain.

Craig, 76 F.3d at 596. Relying upon this language in Craig, this Court remanded in Hill v. Commissioner of Social Security, 49 F.Supp.2d 865, 869 (S.D. W.Va. 1999) (Hallinan, J.), for consideration of the threshold issue in the pain analysis over the Commissioner's contention that it would be a waste of judicial and administrative resources because Mr. Hill would still be found not

18

disabled. Judge Hallinan stated as follows:

> For the Court to make a determination when reviewing whether the ALJ's decision is supported by substantial evidence, the Court expects those below to conduct a full and intensive review of the record. Justice and fairness demands nothing less. To say that the results would be the same upon a second, more comprehensive review and explanation of the record, and therefore should not be done at all, would be to deny the Claimant his right to a fair decision, and in addition, deny the Court of a fully developed record of review.

Hill, 49 F.Supp.2d at 870. In Arnold v. Barnhart, Civil Action No. 1:04-0422 (S.D. W.Va. Sept. 29, 2005), this Court further held that Craig mandates "that an ALJ must make an *explicit* determination that a claimant has or has not proven an underlying medical impairment that could cause the pain alleged by the claimant." Id. at 11.

> [T]he ALJ's failure to expressly reach a conclusion regarding the first part of the pain disability test, the threshold question of whether a claimant has "an underlying medical impairment that could reasonably be capable of causing the pain alleged," constitutes a failure to apply the correct legal standard in determining that a claimant is not disabled by pain.

Id. at 14. See also Bradley v. Barnhart, 463 F.Supp.2d 577, 581 - 582 (S.D. W.Va. 2006) (J. Copenhaver) (remanding for the ALJ's failure to consider the threshold question of Craig prior to considering the credibility of her subjective allegations); Lester v. Astrue, Civil Action No. 5:10-00380 (S.D. W.Va. Sept. 13, 2011) (J. Berger) (remanding for the ALJ's failure to make an explicit threshold finding stating that the "Court finds a more formulaic interpretation of *Craig*, as presented in *Bradley* and *Arnold*, is best suited to protect the judicial review of an ALJ's decision on the two-step pain and credibility assessment.").

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 15-16.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 16.) Thus, the ALJ made an adequate threshold finding and proceeded to consider

the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 16-21.) At the second step of the analysis, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 16.)

In assessing Claimant's pain and credibility regarding his back pain the ALJ first noted that he underwent surgery which generally was successful in relieving his symptoms. (Tr. at 17.) Prior to surgery, Claimant had sought emergency room treatment for his pain, as well as treatment from his several physicians. (Id.) After surgery, he reported a thirty-five to forty-five percent improvement in pain and later took only Tylenol for pain management. (Id.) The ALJ noted that the March 2010, MRI of the lumbar spine was "rather benign,"as it showed no new herniations or new areas of spinal stenosis. (Tr. at 18.) Claimant then treated with Dr. Kropac on one occasion, at which time, he had some tenderness and limited range of motion. (Id.) Likewise, he indicated pain on hip testing but was able to walk normally. (Id.)

The ALJ found that Claimant was partially credible. (Tr. at 19.) He noted that Claimant's statements were inconsistent with the March 2010, MRI and Dr. Kropac's exam results, which revealed limits to spinal range of motion and tenderness. (Id.) He noted that Claimant's current treatment regimen was minimal and that nothing seemed to suggest that his pain would prevent him from working. The undersigned finds that the ALJ's findings are supported by the substantial evidence of record. Despite Claimant's allegations to the contrary, the record demonstrates overall, that his back condition improved after surgery, at least respecting his reports of pain and other symptoms. He initially reported a moderate percentage improvement, he stopped going to physical therapy, and with the exception of a few treatment notes with Dr. Harron and an instance of a report of pain to Dr.

Glasscock and Dr. Kropac, the record is void of other reports of pain following the surgery. Though Claimant takes issue with the ALJ's notice of lack of pain medication, it is one factor to consider in the severity and intensity of Claimant's pain. He was able to tolerate the pain with only Tylenol or Motrin. Furthermore, as the ALJ found, the March 2010, MRI did not reveal any new herniations or stenosis, or exacerbations of existing conditions. Additionally, Claimant testified that because his wife was disabled, he was the responsible party for doing the grocery shopping and driving. (Tr. at 52.) Accordingly, the undersigned finds that the ALJ's pain and credibility assessment is supported by the substantial evidence of record.

4. Treating Opinion.

Finally, Claimant alleges that the ALJ erred in giving limited weight to Dr. Kropac's opinion. (Document No. 11 at 9-10.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the

source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2011). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

In the instant matter, the ALJ gave limited weight to the opinion of Dr. Kropac because it was not well supported by his examination results and the other medical evidence and was inconsistent with the record as a whole. (Tr. at 19-20.) As noted, Dr. Kropac failed to identify the medical evidence that supported his conclusions. In his treatment note, Dr. Kropac opined that Claimant required permanent restrictions in lifting, pushing, pulling, bending, stooping, and prolonged sitting or standing. (Tr. at 496.) Yet, in his RFC assessment, he concluded that Claimant had unlimited ability to push and pull, and that he could occasionally stoop and crouch. (Tr. at 20, 485-86.) Additionally, physical findings on exam revealed normal motor and muscle strength, a normal gait, and no evidence of weakness on walking. (Tr. at 20, 495.) Additionally, Dr. Kropac's opinion was inconsistent with Claimant's minimal treatment following his surgery, as summarized above. Accordingly, the undersigned finds that the ALJ's decision to give limited weight to Dr. Kropac's opinion is supported by substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal

Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Senior Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 28, 2014.

R. Clarke VanDervort
United States Magistrate Judge

24